## ELIAS OSBORNE v. THE STATE.

1. ATTEMPT TO MURDER. *Poison. Evidence of.*
    In order to maintain a conviction under an indictment for an attempt to commit murder by administering poison, it must be proved that the substance administered was capable of destroying life. This may be shown by results as well as by expert testimony, but such results must not be of doubtful or uncertain character.

2. SAME. *Poison. Evidence of. Case in judgment.*
    O. was indicted for an attempt to murder H. with a poison called "Rough on Rats." The evidence showed that O. had put a powder in H.'s corn-meal, and that bread made of the meal caused H. and his family to become very sick, and a chicken died soon after eating the meal. There was no other proof as to the nature of the substance charged to be poison, or of its poisonous effects. *Held,* that the evidence adduced does not show satisfactorily that the substance for administering which O. was indicted was a poison.

APPEAL from the Circuit Court of Panola County.

HON. A. T. ROANE, Judge.

The grand jury of Panola County found an indictment charging that Elias Osborne " did feloniously administer to human beings, to wit: Charles Hill and his wife and children, with intent to kill them, a certain poison, which poison was taken by said persons, but death did not ensue therefrom ; the particular and technical name of said poison being to the jurors unknown, but it is commonly called ' Rough on Rats.' "

On the trial there was evidence which tended to show that Osborne had had a lawsuit with Hill, and had been defeated; that Hill had sent by a boy a bag of corn to a mill, to be ground into meal, and that Osborne stopped the boy on his return from the mill and put a certain powder, which Osborne called "Rough on Rats," in the bag; that Hill and his family became sick after

eating bread made of the meal, and that a chicken died soon after eating of it. A further statement of the circumstances of the case will be found in the opinion of the court.

The jury found the defendant guilty, as charged in the indictment, and he appealed.

*Miller & Rainwater*, for the appellant.

We respectfully submit that it was absolutely essential to conviction, under this indictment, that there should have been proof that the alleged powder, " Rough on Rats," was a *poison*, in order to establish the *corpus delicti*. The indictment charged the administering of *poison*, under the statute against poisoning, and it was impossible to make out a case against the accused without proof that the substance administered was *poison*.

It has been held that an " attempt to poison is not committed by administering a substance not poisonous, even though believed to be so ; because if it actually killed the person he would not have been poisoned to death," citing 11 Ala. 57 ; 12 Pick 173, and other cases. Elwell's Med. Juris. p. (3d ed.) 451 ; Ib., chap. 32, p. 439 *et seq.;* 1 Archb. Crim. Pr. & Pl. 958 ; 1 Whart. Crim. L., § 837; Ib., § 843.

There was *no evidence whatever* that " Rough on Rats," or that the powder mentioned by witness, was *poison*. In all cases of indictment for poisoning, it is universally the rule to introduce chemists, experts, or physicians to prove the article to be a poison, and where death ensues, we know that a *post-mortem* examination is frequently made, and simply because it is essential to prove it is poison.

*J. R. Chalmers*, on the same side.

In this case there is no proof that Rough on Rats was poison, and this is essential.

" The nature of the poison or other noxious thing must be proved." Roscoe's Cri. Cr. 251.

*T. M. Miller*, Attorney General, for the State.

A poison is defined to be a substance having an inherent deleterious property which renders it when taken into the system capable of destroying life.

But since reason and evidence are co-ordinate factors when the administering of a substance is proved and it is shown to possess this active property I am not aware of any rule of law which requires men versed in the special science to be called on to testify that it is a known poison. Generally speaking, a chemical analysis is always desirable, and perhaps usual, but it is not absolutely necessary when the proof is otherwise sufficient.

The books on evidence merely say generally the fact of poison having been administered may be proved by experts, who give opinions on the established facts of the case, and that a chemical analysis is desirable.

But the chief reason is that the symptoms of poisoning so closely resemble those of certain phases or forms of disease.

The conclusions of science are among the things of which courts take judicial notice.

Greenleaf says it is sufficient if the jury are satisfied, from all the circumstances, and beyond reasonable doubt, that the death was caused by poison, administered by the prisoner. 3 Gr. Ev. 135 and notes.

On the same principle exactly, it would be sufficient to satisfy the jury beyond reasonable doubt from the circumstances (effects proved) that the attempt to kill was by a poison.

CAMPBELL, J., delivered the opinion of the court.

The evidence is not sufficient to show satisfactorily the nature and character of the substance charged by the indictment to be poison. That persons were made very sick by it does not prove it was poison, and that a chicken died after eating meal containing this substance does not prove it was poison. Chemical examination or the testimony of experts is not necessary, but the evidence of the action of the alleged poison must be sufficient to show it to be such. Many things taken into the stomach may produce sickness which will not result in death, and the death of a chicken from eating what made human beings very sick is an unsatisfactory test of the poisonous nature of the substance. The character of the sickness of the persons, their symptoms, the remedies resorted

to, the length of time after eating the bread, the duration of the sickness, are not shown by the bill of exceptions. It does not appear that any person died from eating this substance. Many were made sick and all got well. Whether antidotes to poison were used, whether a physician was summoned, or whether each of the sick recovered without any remedial agent being employed does not appear. If all the sick recovered without resorting to antidotes for poison, it may be gravely doubted if they swallowed poison.

In order to maintain a conviction under this indictment it must be proved that the substance administered was capable of destroying life. As said above, this need not be proved by a chemist or expert, and may be proved by results, but they must not be of doubtful or uncertain character.

*Reversed and remanded.*